IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELLA DAVIS,

        Plaintiff,                      No. CIV S-08-46 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.              <u>ORDER</u>
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g) .

/////

/////

/////

/////

I. Factual and Procedural Background

In a decision dated February 9, 2007, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of severe central canal stenosis and degeneration of L5-S1 but these impairments do not meet or medically equal a listed impairment; plaintiff and her friend are not credible; plaintiff can perform light work with no climbing of ladders or scaffolding and must avoid heights and dangerous moving machinery; plaintiff can perform her past relevant work as a data entry clerk and service representative; and plaintiff is not disabled. Administrative Transcript ("AT") 26-28.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Plaintiff argues, among other contentions, that the ALJ erroneously rejected the opinion of a treating physician.[2]

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

---

[2] As explained below, the ALJ's failure to articulate legitimate and specific reasons, supported by substantial evidence, for rejecting the opinion of a treating physician requires remand. The court, therefore, will not address plaintiff's remaining assignments of error. On remand, however, if the Commissioner determines that a presumption of continuing disability should apply, the record must contain the prior decision making the determination of nondisability, so as to afford an appropriate basis for comparison. See generally Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988).

3

III. <u>Analysis</u>

Plaintiff contends the ALJ improperly rejected the opinion of treating physician Dr. Kapur. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. <u>Id</u>. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

Plaintiff's treating physician, Dr. Kapur, opined in a residual functional capacity questionnaire, dated August 8, 2006, that plaintiff could occasionally lift less than ten pounds and could sit for only five minutes before needing to get up. AT 221-224. The ALJ accorded little weight to the limitations assessed by Dr. Kapur, giving greater weight to the assessment of

4

examining physician Dr. McIntire, who performed a comprehensive orthopedic evaluation on October 3, 2002. AT 24, 229-232. The reasons the ALJ gave for according little weight to Dr. Kapur's opinion included that Dr. Kapur was not a specialist, the minimal length of treatment by the doctor, the doctor's referral of plaintiff to physical therapy but not waiting for the results of that therapy prior to rendering an opinion, his opinion's partial basis on plaintiff's subjective complaints, and his listing of insomnia as a symptom whereas plaintiff testified she took four one-hour to two-hour naps every day.[3] AT 24. Upon review of the whole record, the court finds these reasons are not legitimate and are not supported by substantial evidence.

  Dr. McIntire's opinion was rendered in October 2002, soon after the alleged onset date of disability of June 13, 2002. AT 59, 229. Dr. Kapur's opinion was rendered in August 2006. During the intervening four year period, plaintiff filed an updated disability report indicating deleterious changes in her physical condition, occurring in 2004. AT 98-104. Plaintiff also underwent an MRI examination in 2004, which demonstrated a worsening condition when compared to the only MRI results available to Dr. McIntire, dated April 4, 2001 -- from a time period predating the alleged onset date of disability. AT 148, 216, 229. While the ALJ was correct that Dr. Kapur had a limited treatment relationship with plaintiff, in formulating his opinion, Dr. Kapur had available for his review treatment notes from San Joaquin General Hospital extending back several years to 2001. AT 139, 167-219, 221. Those records reflect several positive neurological findings. AT 139, 172, 174, 175, 180, 182, 184, 213. In rejecting Dr. Kapur's opinion, it appears the ALJ did not give sufficient consideration to whether there was a later onset date of disability other than the alleged onset date. On this record, the court cannot find that the ALJ's rejection of Dr. Kapur's opinion in favor of Dr. McIntire's opinion is legitimate.

---

[3] The ALJ does not explain how taking naps is inconsistent with a claim of insomnia. It appears equally likely that a person who is exhausted from insomnia would have to take naps frequently to overcome the lack of normal night-time sleep.

The remaining question is whether to remand this case to the ALJ or to order the payment of benefits. "The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985); see also Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). Generally, the Court will direct the award of benefits "in cases where no useful purpose would be served by further administrative proceedings or where the record has been thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ improperly rejected the opinion of Dr. Kapur. Even if the ALJ properly disregarded Dr. Kapur's ultimate conclusion of disability, the ALJ improperly rejected Dr. Kapur's residual functional capacity findings. Where the ALJ "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the court] credit[s] that opinion as a matter of law." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). If properly credited, plaintiff is limited, at best to sedentary work.[4] When a hypothetical posed to the vocational expert included Dr. Kapur's limitations, the vocational expert opined that plaintiff could not perform her past relevant work. AT 222-223, 268-269. Plaintiff has thus met her burden at step four of the sequential analysis. Turning to step five, under grid rules 201.02 (sedentary, advanced age, no transferable skills) or 201.10 (sedentary, closely approaching advanced age, no transferable skills), plaintiff must be found disabled. However, under grid rules 201.03 and 201.11, if plaintiff has transferable skills, plaintiff could be found not disabled. In finding plaintiff was not disabled, the ALJ utilized grid rules that include both transferable and

---

[4] "Sedentary work" is defined by 20 C.F.R. § 404.1567(a)(1996) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

nontransferable skills (202.11 and 202.12). AT 26. The ALJ also found that transferability of skills was not material to the decision. AT 27. Because of these findings, the matter must be remanded for further development of the record on the issue of transferability of skills. See Silveira v. Apfel, 204 F.3d 1257, 1262 n.17 (9th Cir. 2000) (where ALJ expressly states transferability of skills not an issue, no implicit finding that plaintiff has no transferable skills where ALJ applies grid rule that uses "skills not transferable").

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is denied; and

3. This matter is remanded for further proceedings consistent with this order.

DATED: March 31, 2009.

_____
U.S. MAGISTRATE JUDGE

006
davis.ss